# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BETTY HARRIS,**

        **Plaintiff,**

**-vs-**                                                    Case No.  **6:04-cv-1679-Orl-22DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.     Procedural History**

Plaintiff filed for a disability insurance benefits on April 25, 2000. R. 93.  She alleged an onset of disability on July 21, 1999, due to chronic depression, chronic low back pain, and diabetes. R. 93, 103.  Her application was denied initially and upon reconsideration. R. 39-48.  Plaintiff

requested a hearing, and the Administrative Law Judge James R. Ciaravino (hereinafter referred to as "ALJ") found Plaintiff not disabled. R. 18. Plaintiff timely filed a Request for Review of the ALJ's decision and the Appeals Council granted Plaintiff's request on September 20, 2002, remanding the case to the ALJ for further evaluation. R. 18. After a supplemental hearing, the ALJ on August 18, 2003 again found Plaintiff not disabled. R.18-28. Plaintiff again timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on October 7, 2004. R. 10-12. Plaintiff filed this action for judicial review on November 17, 2004. Doc. No. 1.

**B.     Medical History and Findings Summary**

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of chronic depression, chronic low back pain, and diabetes. R. 103. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from diabetes mellitus, osteoporosis, menopausal syndrome, somatoform disorder, and personality disorder, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 27, Finding 3. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to stand, walk and sit six hours in an eight-hour workday and lift 50 pounds, with moderate deficiencies in concentration, persistence and pace. R. 28, Finding 7. The ALJ also found that Plaintiff had the ability to understand, remember and carry out short and simple instructions with moderate limitations in the ability to understand, remember and carry out detailed instructions; she would need to avoid humidity, noise, fumes, odors, dusts, gases and poor ventilation. R. 28, Finding 7. In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible for the reasons set forth in the body

of the decision.[1] R. 28, Finding 5. Based upon Plaintiff's RFC, the ALJ determined, based on the testimony of the vocational expert, that Plaintiff could return to her past relevant work. R. 27; 28, Finding 9. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 27.

Plaintiff now asserts four points of error. First, she claims the ALJ erred by finding she had the RFC to perform sedentary work contrary to her treating doctor's statements. Second, Plaintiff contends the ALJ erred by not ordering a psychological consultative examination. Third, she asserts that the ALJ erred by improperly applying the pain standard. Fourth, she argues that the ALJ erred in evaluating her credibility. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits, medical findings and Plaintiff's stated daily activities. R. 26.

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### A. RFC and the treating physician's opinion.

Plaintiff claims that the ALJ should not have found her able to perform her past relevant work in light of limitations assigned by her treating physician, Dr. Conavay, which precluded even sedentary work. The Commissioner contends that the ALJ appropriately rejected Dr. Conavay's opinions as unsupported by objective evidence.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past

work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

Because the ALJ concluded, based the residual functional capacity he assigned to Plaintiff, that she could perform her past relevant work, he did not need to proceed to the fifth step of the sequential process. However, since there was a vocational expert at the hearing, the ALJ noted that Plaintiff, with the residual functional capacity he had assigned, was capable of other work such as a photocopy machine operator, a receptionist, and an information clerk.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends that the ALJ's RFC determination that Plaintiff could perform medium work was erroneous because it conflicted with the opinion of her treating physician, Dr. Chris Conavay, that she had disabling functional and mental limitations, including an inability to work a full eight-hour day, a need for frequent rest periods, and a need to lie down during the day. Plaintiff contends that Dr. Conavay's opinion is supported by substantial evidence and is not conclusory or inconsistent with his physical findings, thus it should have been accorded more weight than that of the non-examining physician.  Plaintiff contends that the ALJ should not have based his entire determination of the RFC on that of the non-examining State Agency physician when other contrary opinions based on substantial evidence from the claimant's treating physician were in the record.

As the Commissioner rightly contends, Dr. Conavay is not a mental health expert and the ALJ appropriately rejected his opinions as to Plaintiff's mental impairments as unsupported by objective evidence.  The ALJ opined:

> The undersigned finds that the evidence does not support the claimant's allegation that she was totally unable to work. The evidence consistently demonstrates that the claimant has several mild to moderate symptoms, none of which, either singly or collectively, is of a level of severity to completely preclude the claimant from any work activity.  The symptoms alleged by the claimant are beyond what can be expected from her impairments.  Dr. Yerushalmi indicated in the report of his psychological consultative examination that the claimant had somatic tendencies. On January 27, 2000, Dr. Conavay indicated in a report to the claimant's former employer that the claimant had poorly controlled diabetes when in the work environment due to stress and her depression was resistant to treatment. He indicated that the claimant had no physical limitation of functional capacity and she was capable of heavy physical activity. Dr. Conavay indicated that the claimant had a significant loss of psychological, physiological, personal and social adjustment due to her severe depression. However, he indicated in his progress notes dated January 27, 2000, that the claimant's diabetes was well controlled with oral medications and her progress with anxiety and depression was "somewhat poor but slow and steady" and there had been some improvement. On May 2, 2000, Dr. Conavay completed another form for the claimant's employer and indicated that the claimant had depression, chronic sciatica and diabetes; her condition was permanent.  In his

     progress notes dated May 2, 2000, Dr. Conavay indicated that the claimant did have poor control of her depression and anxiety, but, from a physical standpoint, she had normal range of motion, no areas of tenderness noted, and her extremities were free from edema. The physical residual functional capacity assessments of September 29, 2000 and December 6, 2001 by Dr. Conavay are not well supported by objective evidence. The diagnostic studies performed during the consultative orthopedic examination on August 4, 1999, showed very slight thoracic scoliosis to the right and no significant degenerative or other changes. The examination revealed full range of motion of the lumbar spine. Even when the claimant was treated in the emergency room on May 5, 2001, for musculoskeletal chest pain, she was only advised to avoid "heavy" lifting. In addition, there is no documentation of mental health treatment from a psychologist or psychiatrist. Dr. Conavay, the claimant's family medicine treating physician, is the only physician treating the claimant with psychotropic medications for depression and anxiety. Consequently, the [ALJ did] not accept Dr. Conavay's restrictions since there is little objective basis for the extreme limitations. Furthermore, Dr. Conavay is beyond his expertise with respect to his assessment of her mental condition. He appears to be reacting to the claimant's desire for disability insurance benefits through her employer's long term disability insurer. She pursued short and, then, long term disability after her transfer to a Sprint office in Florida which reportedly did not go smoothly and her job was not the equivalent of the one she had in North Carolina.

R. 44-45[2]. In the ALJ's more recent August 18, 2003 decision, he again rejected Dr. Conavay's

opinion after carefully considering all of the objective medical evidence:

     The State Agency Physician also had the opportunity to review the evidence and concluded based on the claimant's physical impairments that she could stand, walk and sit six hours in an eight-hour workday and lift 50 pounds. . . By contrast, Dr. Conavay opined that the claimant could not even stand, walk or sit one hour in an eight-hour workday and only lift ten pounds occasionally. Dr. Conavay's extreme limitations are not at all supported by the objective findings. He even said initially that the claimant just needed to "avoid heavy lifting." Dr. Conavay makes a diagnosis of a herniated disc, arthritis of the lumbar spine, arthritis of the knee and a torn meniscus of the left knee. Yet, a recent x-ray of the lumbar spine is normal. Dr. Krumins, an orthopedic surgeon, found only mild to moderate degenerative arthritis of the left knee. She had full range of motion of this knee. The consultative evaluation found normal grip strength in both hands normal gross and fine manipulation and 5/5 motor strength. The claimant had a normal gait and no lumbar spasms or tenderness. Her diabetes has been controlled and here are no indications

---

[2]The ALJ's decision was remanded by the Appeals Council for additional vocational testimony and consideration, and not for reconsideration of the ALJ's finding on Plaintiff's mental impairments. R. 75-76.

> of any recent asthma attacks. *Therefore, the undersigned rejects the extreme opinion of Dr. Conavay as it is not at all supported by the clinical and laboratory findings.* The undersigned accords greater weight to the opinion of the State Agency [physician] whose findings are consistent with the medical evidence that she is capable of standing, walking and sitting six hours in an eight-hour workday and lifting 50 pounds. The claimant would have some environmental limitations based on her history of asthma.

R. 26 (emphasis added). The ALJ relied on the report of Dr. Yerushalmi, who conducted a psychological consultative examination, in finding that the claimant had "somatic tendencies." R. 44-45. Dr. Yerushalmi's report of August 5, 2000 (R. 176-79) certainly contradicts Dr. Conavay's opinions. During the examination with Dr. Yerushalmi, Plaintiff reported that driving is a stress reliever for her and when she is stressed, she drives for hours. R. 177. During the examination, Plaintiff displayed good verbal skills and gave all of her information independently, displaying good memory and concentration. R. 177. She reported typing on the computer to keep her skills sharp, watching television, caring for her seven month old grandchild while her daughter attended school, managed her father's affairs, and did some household chores. R. 177. Her conversation was coherent and goal-directed, her memory and concentration were not impaired, and she appeared to be functioning in the high-average range cognitively. R. 178. Dr. Yerushalmi opined that Plaintiff seemed "mildly depressed." R. 178. Plaintiff "reported that she had gotten tired of the "situation at work" and that "there were 'many things about the job' that she didn't like." R. 178.

The ALJ was correct to discount the findings of Dr. Conavay, who has no special mental health training, with respect to his assessment of Plaintiff's mental condition. R. 25; *see* 20 C.F.R. § 404.1527(d)(5) (more weight generally given to opinion of specialist). There is no documentation of mental health treatment from a psychologist or psychiatrist, but only treatment by Dr. Conavay,

Plaintiff's general practitioner[3]. For one thing, Dr. Conavay failed to diagnose Plaintiff with a somatoform or personality disorder, as the consulting and reviewing psychologists did. R. 178, 185, 195. A somatoform disorder is a mental disorder characterized by symptoms suggesting physical disorders of psychogenic origin but not under voluntary control. Dorland Pocket Medical Dictionary 253 (25th ed. 1995). Dr. Conavay was Plaintiff's primary care physician, not a specialist in mental health, and his records document treatment for generalized depression, with no psychiatric treatment although he did prescribe a series of psychotropic medications for depression and anxiety. As the basis for one of the Dr. Conavay's "Attending Physician's Statement of Disability," he acknowledged that he had prescribed and Plaintiff had tried seven different anti-depressants, none of which adequately controlled her depression. R. 272.

As the ALJ surmised, Dr. Conavay was reacting to Plaintiff's desire for disability insurance benefits through her employer's long term disability insurer. Following Plaintiff's mother's death, she pursued short and, then, long term disability after her transfer to a Sprint office in Florida. R. 262, 270. On December 10, 1999, she reported to Dr. Conavay that she was overwhelmed by the thought of returning to work and she had decided to retire. R. 277. Plaintiff told Dr. Yerushalmi during the examination that "her job 'became too demanding' and she couldn't meet expectations." R. 176. She reported having a nervous breakdown after her mother died, although there is not independent evidence the breakdown or emergency room visit in the file. R. 176. Plaintiff told Dr. Yerushalmi that when she transferred to the local Sprint office in Orlando, the "transition did not go smoothly and the job she was offered here was not equivalent to the job she had in North Carolina."

---

[3]Plaintiff testified that Dr. Conavay had once suggested referring her to a psychiatrist, but she had not pursued that. R. 386. She testified that she had seen a psychiatrist a couple of times after her mother died but that she could not afford to continue treatment with him. R. 313. Nevertheless, there are no records of psychiatric treatment in the record.

-9-

R. 178. However, Plaintiff testified at the hearing that, after her onset date, she took a downgrade in pay for the job of repair clerk in the Orlando area office, but was "happy" at work in Florida. R. 416-17.

Dr. Ramirez, a consulting psychologist who performed a general personality evaluation of Plaintiff on December 4, 2002, found she had no more than moderate mental limitations. R. 312-14. Plaintiff told Dr. Ramirez that she spent most of the day in bed due to body pain. R. 313. Her concentration, attention, and memory processes were within normal limits, and her judgment and insight seemed to be fair. R. 313. The MMPI-2 test results showed that Plaintiff tended to exaggerate and over-dramatize her symptoms. R. 313. Dr. Ramirez's clinical interview together with behavioral observations and test results indicated that Plaintiff was currently experiencing moderate emotional distress characterized by depressed feelings, worry and anhedonia. R. 313. Plaintiff was diagnosed with an Adjustment Disorder with Mixed Anxiety and Depressed Mood, Chronic. R. 314.

The ALJ also appropriately relied on the opinions of the non-examining state agency psychologists who assigned slight or moderate limitations in some areas. R. 187-90, 193-94. Dr. Stevens opined that Plaintiff has some moderate limits in persistence due to her mental condition – largely somatoform disorder, characterized by unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury, and a personality disorder. R. 195, 203-04. Dr. Carter also opined that Plaintiff had a somatoform disorder and personality disorder. R. 185. The ALJ was entitled to rely on the reviewing psychologists opinions. R. 25-26.

As to Plaintiff's physical impairments, Dr. Conavay's descriptions of Plaintiff's impairments and limitations are not supported by the evidence. Dr. Conavay initially reported on January 27, 2000 (six months after the onset date) that Plaintiff had no limitation of functional capacity, and was capable of heavy physical activity. R. 272 (Category No. 7). On August 4, 1999, Dr. Zittel of Jewett Orthopaedic found Plaintiff had a "very slight thoracic scoliosis," which was aggravated by posture. R. 310. On August 2, 1999 (also at Jewett Orthopaedic), Dr. Chase's impression of Plaintiff's cracking in her knees was that it was consistent with mild patellofemoral crepitus without pain and required no intervention. R. 311. Despite the lack of significant findings, Plaintiff told Dr. Ranganathan on July 12, 2000 that the doctors at Jewett Orthopaedic had told her she had curvature in the LS spine and arthritis. R. 158. Dr. Ranganathan found on examination that Plaintiff had no LS spine spasm or tenderness or any other joint spasm or tenderness. R. 159.

Dr. Conavay changed his opinion to state that Plaintiff had disabling physical limitations as of July 2, 2002; however, the specialists' reports remained essentially unchanged. R. 318. An x-ray of the lumbar spine performed at Boston Diagnostic Imaging on August 16, 2002 was completely normal; vertebral bodies were normal in height and in alignment without evidence of intervertebral disc space narrowing, degenerative change, or congenital abnormality. R. 330. An orthopedic surgeon at Jewett Orthopaedic, Dr. Kenneth Krumins, found Plaintiff had only mild to moderate degenerative arthritis of the knees, with full range of motion. R. 327-30. Nevertheless, Dr. Conavay completed a Physical Capacities Evaluation questionnaire in which he reported that Plaintiff could sit for one hour and stand or walk for less than one hour in an eight hour workday. R. 316. Dr. Conavay's updated opinion was that Plaintiff had disabling physical limitations caused by a herniated lumbar disc, arthritis in the lumbar spine, and arthritic knees with a torn meniscus and she

had to elevate her feet every two to three hours to rest her spine. R. 317-18. He also indicated that Plaintiff would require complete freedom to rest frequently without restrictions. R. 317. The medical evidence, especially of the treating specialists, did not support the RFC opinions of Dr. Conavay. Accordingly, good cause existed for the ALJ's failure to credit his opinion.

### B. Consultative mental examination

Plaintiff contends the ALJ erred in not ordering a psychological consultative examination when the record shows the claimant had an extensive history of depression, had not been evaluated by a doctor specializing in the mental health since the death of her husband, and the ALJ indicated that he might need to a order a psychological consultative examination. She argues that a consultative examination of Plaintiff's current mental status at the time of the second hearing was crucial to the ALJ's ability to issue an informed decision, but he did not order one. The Commissioner contends the ALJ was not required to order a third consultative psychological examination because there was sufficient evidence in the record concerning Plaintiff's mental impairment for the ALJ to decide Plaintiff's claim.

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917. In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).

Plaintiff erroneously relies on the ALJ's statement that "maybe we need to do another assessment" as evidence that one should have been ordered. R. 445. The ALJ prefaced his

-12-

comments with "I'll still look over the record.  Maybe we need a little further since, since the loss of her husband, maybe we need to do another assessment in terms of psychological.  I'll consider a psychological C.E. . . . [B]ut we do have testimony which, which supports the prior testimony at the hearing that she could even possibly go back to that job."  R. 445.  The ALJ was entitled to rely on the prior two psychological assessments from Dr. Yerushalmi (in 2000) and Dr. Ramirez (in 2002) that found Plaintiff suffered from "slight" depression and tended to overdramatize or exaggerate her symptoms. R. 178, 313.  The ALJ was also entitled to rely on the reports of the state agency psychologists.  As the Commissioner points out, the record fails to reflect evidence that this event significantly altered Plaintiff mental condition so as to warrant another evaluation.   Good cause existed for the ALJ's failure to order a third consultative mental examination.

### C.     Pain and credibility.

Plaintiff contends the ALJ erred by improperly evaluating Plaintiff's pain due to her back and knee impairments. She also argues that the ALJ erred by finding her subjective complaints "not totally credible."  She contends that the record demonstrates her credibility and that the ALJ failed to provide adequate and specific reasons for discrediting her complaints.  The Commissioner argues the ALJ properly discredited Plaintiff's complaints based on many factors and evidence of Plaintiff's exaggeration of symptoms, according to the consultative examining physicians.

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560.  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).  The ALJ specifically referred to the Eleventh Circuit's pain standard in evaluating Plaintiff's subjective complaints.  R. 25.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination.  In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated,

> The claimant's subjective complaints and symptoms, including her allegations of pain and limitations as well as depression have been given a great deal of thought and carefully compared to the other evidence.  The claimant's testimony and other reports reflect that she lives a functional type lifestyle, which is consistent with the medical evidence.  The claimant is able to take care of her personal needs and activities of daily living.  She is able to drive, help out with laundry, cook and shop.  She goes to church, eats out with friends and handles her father's affairs.  She gets along well with her family.  She pays her bills on the computer and helps out with her two-year old grandchild.  There are no reported significant side effects from medications. Activities and reports such as these are inconsistent with her allegations of incapacitating limitations or pain.  This is not to minimize the medical impairment demonstrated in the record.  The claimant does have impairments that limit her activities such as heavy lifting and moderate deficiencies in concentration, persistence and pace.  However, the clinical findings resulting from these impairments do not appear to be of a degree capable of producing pain or limitations of incapacitating proportions.  Accordingly, the undersigned finds that the claimant's allegations and subjective symptoms are out of proportion and inconsistent with the medical evidence and are not fully credible.

R. 26.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff contends that her pain complaints are supported by Dr. Conavay's diagnosis of a herniated disc of the lumbar spine, arthritis of the lumbar spine, arthritis of the right and left knee, and a torn meniscus of the left knee. R. 318. Although Plaintiff consistently complained of pain to her family doctor, Dr. Conavay, and other physicians, Plaintiff's treating orthopaedic specialists failed to find objective evidence of significant back problems or knee problems. However, an x-ray of the lumbar spine performed at Boston Diagnostic Imaging on August 16, 2002 was completely normal without evidence of intervertebral disc space narrowing, degenerative change, or congenital abnormality. R. 330. An orthopedic surgeon, Dr. Kenneth Krumins, found Plaintiff had only mild to moderate degenerative arthritis of the knees, with full range of motion. R. 327-30. Plaintiff contends that "treating physicians continued to prescribed pain medication" to her, however, the only one prescribing any pain medication on a long term basis was Dr. Conavay, whose opinion the ALJ properly rejected.

Here, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints, including inconsistencies between her reports and the examination findings, as well as inconsistencies between her statements and her activities of daily living. Moreover, both

consultative psychologists Dr. Ramirez and Dr. Yerushalmi found that Plaintiff tended to exaggerate and overdramatize her symptoms or diagnosed her with a somatoform disorder. R. 178, 313. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The ALJ's reasons are supported by substantial evidence.

### *IV. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and activities are affected by her ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on February 28, 2006.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record